**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adam Long, | No. CV-20-01524-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Adam Long's applications for disability insurance and supplemental security income benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14, "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 17, "Def. Br."), and Plaintiff's Reply (Doc. 18, "Reply"). The Court has reviewed the briefs and Administrative Record (Docs. 11-1 to 11-14, "R.") and now affirms the Administrative Law Judge's ("ALJ") decision (R. 27-42) as upheld by the Appeals Council. (*Id.* at 1.)

I.  **Background**

Plaintiff filed his applications for benefits on April 25 and 27, 2017, with both applications alleging disability beginning on November 30, 2015. (R. 27.) Plaintiff's claim was denied initially on June 20, 2017, and upon reconsideration on October 16, 2017. (*Id.*) On June 17, 2019, Plaintiff appeared before the ALJ for a video hearing on his claim, and on October 28, 2019, the ALJ denied Plaintiff's claim. (*Id.* at 24, 27.) The Appeals Council

denied Plaintiff's request for review. (*Id.* at 1.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: history of left labrum tear, status-post surgery; left shoulder strain; fibromyalgia; history of chronic fatigue syndrome; history of seizure disorder; ulnar neuropathy; adjustment disorder; and history of opioid use and alcohol use disorders, in remission. (*Id.* at 29.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from November 30, 2015 through the date of the decision. (*Id.* at 41.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.* at 30.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"), finding Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for 2 hours of an 8-hour workday; sit for 8 hours of an 8-hour workday; occasionally reach overhead with the bilateral upper extremities; and can perform routine, noncomplex tasks in a nonpublic setting.

(*Id.* at 31.)

Accordingly, although the ALJ found that Plaintiff "is unable to perform any past relevant work," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 40.) Considering testimony from the vocational expert ("VE"), the ALJ found that Plaintiff was capable of performing work as a "document preparer," "polisher, eye glass frames," or "addresser." (*Id.* at 41.)

II. **Legal Standard**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517

n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

. . .

. . .

III.     **Analysis**

Plaintiff's opening brief raises two arguments. First, Plaintiff argues the ALJ erred when evaluating the opinions of Dr. Miguel Tosado. (Pl. Br. at 6-11.) Second, Plaintiff argues the ALJ erred by presenting an incomplete hypothetical question to the VE. (Pl. Br. at 11-13.)

A.     Medical Sources

1.     **2017 Regulations**

In early 2017, the SSA amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The amended regulations apply to claims filed on or after March 27, 2017. *Id.* The parties agree that Plaintiff filed his application after the effective date. (Pl. Br. at 3; Def. Br. at 3.) They disagree, however, about whether the new regulations change the Court's analysis.

Under the old regulations, "[t]he law in the Ninth Circuit [was] that, although the ALJ must consider all medical opinion evidence, there is a hierarchy among the sources of medical opinions. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians." *Latahotchee v. Comm'r of Soc. Sec. Admin.*, 2021 WL 267909, *4 (D. Ariz. 2021) (citation omitted). Based on this hierarchy, the Ninth Circuit consistently ruled that an ALJ may only reject an examining physician's opinion by providing "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion. . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant,"

"specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2), (c).

Plaintiff argues that the SSA's "regulatory changes do not set aside precedent." (Reply at 5.) He contends that "[t]here is no dispute the treating physician rule is independent of any regulations issued by" the SSA. (*Id.* at 4.) He further contends that the revised regulations do "not remove an ALJ's burden to provide legally-sufficient reasons for rejecting the medical statements of a claimant's treating medical sources." (*Id.* at 3.)

To the extent Plaintiff argues that the Ninth Circuit's physician hierarchy remains good law, the Court disagrees for the reasons stated in its earlier decisions in *Pennock v. Comm'r of Soc. Sec. Admin.*, 2020 WL 6796768, *3 (D. Ariz. 2020) (citing *Schisler v. Sullivan*, 3 F.3d 563 (2d Cir. 1993)), and *Toback v. Comm'r of Soc. Sec. Admin.*, 2022 WL 60548, *2 (D. Ariz. 2022) ("The new regulations eliminate the previous hierarchy of medical opinions."). Although the Ninth Circuit has not yet weighed in on this issue, many other district courts have reached the same conclusion. *See, e.g.*, *Stipkovich v. Comm'r of Soc. Sec. Admin.*, 2021 WL 467189, *10 (N.D. Ohio 2021) ("[T]o the extent Stipkovich argues . . . that the 'treating physician rule' still survives despite the new regulation eliminating that rule, such an argument fails. . . . [T]hat argument has been rejected by other courts, and the undersigned finds their reasoning persuasive.") (citing *Pennock* and *Schisler*); *Jones v. Saul*, 2021 WL 620475, *6-9 (E.D. Cal. 2021) (holding that the new regulations are "valid and entitled to deference," "not contrary to the statute," and "displace[] contrary pre-existing caselaw") (capitalization omitted).

Nevertheless, even under the amended regulations, the ALJ's findings must still "continue to satisfy metrics of both articulation [*i.e.*, specificity] and validity [*i.e.*, legitimacy] to survive review." *Shelley D. v. Kijakazi*, 2021 WL 4443322, *7 (D. Idaho 2021). *See also Kathleen G. v. Comm'r of Soc. Sec. Admin.*, 2020 WL 6581012, *3 (W.D. Wash. 2020) ("The new regulations also do not clearly supersede the 'specific and legitimate' standard. That standard is not an articulation of how ALJs must weigh or

evaluate opinions, but rather a standard by which the court evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence. Whatever factors the Commissioner considers in evaluating a medical opinion, he must explain his reasoning to allow for meaningful judicial review, and the Ninth Circuit's 'specific and legitimate' standard is merely a benchmark against which the Court evaluates that reasoning.").

In sum, regardless of the precise standard, under the 2017 regulations an ALJ must "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). That explanation must still be supported by substantial evidence. 42 U.S.C. § 405(g) ("[F]indings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

2.     **The ALJ Did Not Err When Evaluating Dr. Tosado's Opinion**

Dr. Miguel Tosado is Plaintiff's treating psychiatrist. On July 11, 2017, Dr. Tosado performed a mental status evaluation on Plaintiff and found decreased psychomotor activity, decreased speed and prose of speech, superficial to limited insight and judgment, and that Plaintiff was depressed and anxious. (R. 841-47.) In a "Medical Source Statement Of Ability To Do Work-Related Activities (Mental)" form completed that same day, Dr. Tosado opined that Plaintiff was (1) extremely limited in his ability to understand, remember, or carry out complex instructions and to respond appropriately to usual work situations and to changes in a routine work setting; and (2) markedly limited in his ability to understand, remember, or carry out simple instructions, make judgments on simple or complex work-related decisions, and interact appropriately with the public, supervisors, or co-workers. (*Id.* at 761-62.)

The ALJ "considered and [gave] little weight to Dr. Tosado's opinion . . . that the claimant has marked to extreme limitations in all work-related functional areas. Dr. Tosado's treatment notes indeed indicate the claimant's medical symptoms were indeed exacerbated on July 11, 2017, with abnormal findings on mental status examination. However, this short-term exacerbation of symptoms correlated with the claimant's filing

of divorce in June 2017 and is not reflective of the medical evidence of record as a whole, which instead shows improvement in the claimant's mental symptoms with conservative treatment. Dr. Tosado's opinion is inconsistent with Dr. Beil-Adaskin's opinion, Mr. Burridge's opinion, and the State agency consultants' opinions. Dr. Tosado did not comment on the claimant's history of drug and alcohol abuse." (*Id.* at 38.)

Plaintiff contends the ALJ's first proffered reason for discounting Dr. Tosado's opinion was erroneous because his divorce was not the source of his mental impairment and he did not improve with treatment. (Pl. Br. at 8-9.) As for the ALJ's other proffered reason, Plaintiff asserts that the ALJ erred by elevating the opinions of Dr. Beil-Adaskin and Mr. Burridge over Dr. Tosado's. (*Id.* at 10-11.) Plaintiff argues that Mr. Burridge is "not a medical source even capable of contradicting Dr. Tosado's medical opinion." (*Id.* at 10.)

The Commissioner responds[1] that the ALJ "found not persuasive the extreme to marked limitations set forth in treating source Dr. Tosado's July 11, 2017 opinion because they were unsupported by and [are] not consistent with the longitudinal record." (Def. Br. at 12.) The Commissioner argues the ALJ properly found that Dr. Tosado's proposed limitations were based on abnormal findings around the time of Plaintiff's divorce. (*Id.* at 13.) The Commissioner also argues that the ALJ's consideration of Mr. Burridge's opinion was "relevant evidence from a nonmedical source properly considered in the context of Plaintiff's overall disability determination." (*Id.* at 15.)

Plaintiff replies that his mental impairments existed independently of his divorce and any medical improvement was recognized by Dr. Tosado's medical statement.[2] (Reply at 5.) Plaintiff also reasserts his argument about Mr. Burridge. (*Id.* at 6.)

Applying the 2017 regulations, the Court finds no error—the ALJ explained how he considered the factors of supportability and consistency and identified substantial evidence

---

[1] The Court will not repeat party arguments related to the standard of review, which is addressed above.

[2] Plaintiff also argues that the ALJ erred by assigning particularized weight to medical statements, but arguments raised for the first time in a reply brief are forfeited. *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1166 n. 8 (9th Cir. 2012).

that supported his analysis.

As noted above, under the 2017 regulations, an ALJ must "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). The "supportability" factor is described as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). The "consistency" factor is described as "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

The ALJ addressed the supportability factor by explaining that Dr. Tosado's opinion was "not reflective of the medical evidence of record as a whole" because it rested on the "short-term exacerbation of symptoms [that] correlated with [Plaintiff's] filing of divorce in June 2017." (R. 38.) Put another way, the ALJ found Dr. Tosado's medical opinion to be less persuasive because it was supported by abnormal or outdated, and thus less-relevant, medical evidence. Next, the ALJ addressed the consistency factor by stating that "Dr. Tosado's opinion is inconsistent with Dr. Beil-Adaskin's opinion, Mr. Burridge's opinion, and the State agency consultants' opinions." (*Id.*)

The ALJ's reasoning is supported by substantial evidence. First, the ALJ's supportability analysis is underpinned by his citation of reports from Drs. Tosado and Sarff, which show that Plaintiff's symptoms in July 2017 (*e.g.*, crying) were slightly worse than at previous appointments and were significantly worse than at later appointments. (R. 824 [Dr. Tosado, 4/10/17: "Mood: Decreased range"; "Affect: mood-congruent, reactive, redirectable"]; *id.* at 844 [Dr. Tosado, 7/11/17: "Mood: Depressed, anxious, cried"; "Affect: mood-congruent, reactive with effort in redirection"]; *id.* at 1332 [Dr. Tosado, 12/6/17: "Mood: Mildly anxious, decreased range"; "Affect: Mood congruent, reactive"];

*id.* at 1415 [Dr. Sarff, 6/15/18: "Mood: dysthymic"; "Affect: normal"]; *id.* at 1434 [Dr. Sarff, 8/13/18: "Mood: anxious and dysthymic"; "Affect: normal"].) The timing of Plaintiff's divorce aside, the evidence cited by the ALJ could be construed as establishing that Dr. Tosado wrote his opinion before a significant improvement in Plaintiff's symptoms, and thus Dr. Tosado's opinion was supported by less-relevant medical evidence. *Cf. Barraza v. Colvin*, 2014 WL 651909, *5 n.3 (E.D. Cal. 2014) ("The Ninth Circuit has found that medical reports that are most recent are more highly probative than those which were rendered at some earlier time.").

Second, the ALJ's consistency analysis is supported by his citation of evidence establishing that Dr. Tosado's opinion was more severe than (*i.e.*, inconsistent with) the opinions of Dr. Beil-Adaskin and the state agency consultants.[3] (*Compare* R. 761-62 [Dr. Tosado, assessing marked and extreme limitations] *with id.* at 1453-55 [Dr. Beil-Adaskin, assessing no limitations]; *id.* at 108-09 [Dr. Novak, assessing Plaintiff as moderately or not significantly limited]; *id.* at 153 [Dr. Goldberg, concurring with Dr. Novak except proposing Plaintiff was not significantly limited in his ability to carry out detailed instructions].)

Although Plaintiff identifies various reasons why a different factfinder might have been able to reconcile this evidence with Dr. Tosado's opinion, the ALJ's findings were rational and, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

…

…

…

---

[3] The Commissioner concedes that Mr. Burridge is not a medical source but a nonmedical source whose opinion was properly considered as part of the overall disability determination. (Def. Br. at 15-16.) The Court need not address this issue because the ALJ also explained that Dr. Tosado's opinion was inconsistent with opinions of Drs. Novak, Goldberg, and Beil-Adaskin, rendering harmless any error that came from considering Mr. Burridge's opinion.

B. <u>The ALJ Did Not Err When Questioning The VE</u>

Near the end of Plaintiff's hearing, the ALJ had the following exchange with the VE:

> Q. All right. [VE], assume a hypothetical individual of claimant's age, education and prior work experience. Assume this person is restricted to a sedentary range of work; occasional reaching overhead and that's with either upper extremity and –
>
> A. You said and reaching frequent?
>
> * * *
>
> Q. That was sedentary work, occasional reaching overhead with either upper extremity and routine/non-complex tasks and a non-public setting.
>
> A. Okay. I only have SVP 2, sedentary, Your Honor, and that would be such as document preparer and that's 249.587-018. It has 42,000 national. Another one that's non-public, another one would be such as polisher, eyeglass frames, 713.684-038 and that's national 32,000. And a third one would be such as addresser, addressing envelopes, 209.587-010 and that's 24,000 national, SVP 2, sedentary and non-public.

(R. 90-91.)

Plaintiff contends the ALJ's hypothetical question to the VE was incomplete because it did not explicitly include a limitation, as reflected in the ALJ's RFC determination, of standing or walking for only two hours in an eight-hour workday. (Pl. Br. at 11.) Plaintiff notes that the ALJ's use of the term "sedentary" could allow for standing or walking for up to one-third of a workday (two hours, forty minutes) under the Dictionary of Occupational Titles ("DOT") or "generally" no more than about two hours of an eight-hour workday under Social Security Ruling ("SSR") 96-9p. (*Id.* at 12.) Plaintiff argues that because the ALJ failed to account for "the full range of" Plaintiff's limitations in the hypothetical to the VE, "there is no evidence that Plaintiff can perform the alternative work asserted as performable in the ALJ's decision." (*Id.* at 12-13.)

In response, the Commissioner argues that the DOT sets forth the maximum, not minimum, requirements for occupations. (Def. Br. at 18.) By comparison, the

Commissioner notes that SSR 96-9p defines a job as "sedentary" if it requires walking and standing from very little to one-third of the time, and generally no more than about two hours of an eight-hour workday. (*Id.*) The Commissioner also points out that, under SSR 96-9p, "the full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded." (*Id.* at 19.) Thus, the Commissioner argues that "the ALJ did not err in the hypothetical." (*Id.* at 20.)

In reply, Plaintiff reasserts that the ALJ's failure to provide a complete hypothetical renders the VE's testimony irrelevant and the ALJ's reliance on the VE's testimony is legal error. (Reply at 6-7.) Plaintiff also contends that, under *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009), "[t]he failure to provide a *complete* hypothetical, inherently renders the VE's testimony irrelevant to the matter at hand." (*Id.*)

The Court agrees with the Commissioner that the ALJ did not err in his phrasing of the hypothetical question to the VE. This case is similar to *Terry v. Saul*, 998 F.3d 1010 (9th Cir. 2021). There, the ALJ determined that the claimant had the RFC to stand or walk for up to six hours in an eight-hour workday. *Id.* at 1012. However, the ALJ "did not reference [this] six-hour standing and walking limitation in his questioning of" the VE. *Id.* at 1012-13. Instead, the ALJ simply stated that the claimant would be limited to "medium work." *Id.* On appeal, the claimant argued the hypothetical to the VE was flawed because "the regulation defining 'medium work' . . . does not include any express reference to any standing or walking restrictions," and, thus, "there [was] no reason to assume that [VE] understood [the 'medium work' limitation] to suggest that the hypothetical person had any standing or walking restrictions." *Id.* The Ninth Circuit rejected this argument and affirmed, holding that because the relevant SSR defining the term "medium work" includes a limitation to standing and walking "for approximately six hours out of an eight-hour workday," and because a VE "is presumptively aware of the agency's well-established definition" of such terms of art, the VE "would have understood the ALJ's question to

- 11 -

imply such a limitation." *Id.* at 1011, 1014. The court also found it irrelevant that the regulation defining "medium work" might differ from the SSR defining "medium work," explaining that "the relevant inquiry here is whether the ALJ's question to the vocational expert concerning a hypothetical individual sufficiently conveyed all of [the claimant's] limitations, not whether [the SSR] is entitled to deference." *Id.* at 1014.

Here, similarly, although the ALJ's hypothetical question to the VE did not expressly incorporate the portion of the RFC limiting Plaintiff to two hours of standing or walking in an eight-hour workday, the ALJ's inclusion of a limitation to "sedentary" work necessarily implied such a limitation. This is because the relevant SSR defining "sedentary" work, SSR 96-9p,[4] provides that "[t]he full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday." *See generally Priestly v. Kijakazi*, 2021 WL 5566750, *10 (E.D. Cal. 2021) ("Following *Terry*, courts throughout the Ninth Circuit have determined an ALJ did not err in identifying an exertional level for the vocational expert without the sitting, standing, or walking limitations that are later specified in the claimant's RFC."). It is of no moment that the DOT regulation defines "sedentary" work as potentially involving more than two hours of standing or walking in an eight-hour workday because, under *Terry*, the VE is presumed to have understood the term "sedentary" as it is defined in the SSRs.

Accordingly,

**IT IS ORDERED** affirming the decision of the ALJ (R. 27-42).

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 25th day of March, 2022.

Dominic W. Lanza
United States District Judge

---

[4] Soc. Sec. Admin., *Titles II and XVI: Determining Capability to Do Other Work: Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*, SSR 96-9P, 1996 WL 374185, *3.